UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JUST INTELLECTUALS, PLLC**,
a Michigan corporation,

                *Plaintiff*,

Honorable_____

Civil Action No. _____

vs.

**THE CLOROX COMPANY**,
a Delaware corporation,

                *Defendant*.

_____/

KRISTY J. DOWNING (P 67122)
Attorney for Plaintiff
39555 Orchard Hill Place, Suite 600
Novi, Michigan 48375
Tel:   (248) 982-3925
Fax:   (248) 692-0317
_____/

## COMPLAINT

### The Parties

1. Plaintiff, Just Intellectuals, PLLC (hereafter "Just Intellectuals"), is an intellectual property law firm with a principal place of business at 39555 Orchard Hill Place, Suite 600, Novi, Michigan 48375.

2. Defendant, The Clorox Company (hereafter "Clorox"), is a Delaware corporation, having a principal place of business at 1221 Broadway, Oakland, California 94612-1888.

## Jurisdiction

3. This court has jurisdiction over all causes of action set forth herein based on 28 U.S.C. §1331, 28 U.S.C. §§1338(a)(b), and pursuant to the supplemental jurisdiction of this court under 28 U.S.C. §1367.

4. The federal claim pled herein arises under 35 U.S.C. §292.

5. This court has personal jurisdiction over Defendant as: (i) Defendant maintains regular and systematic business contacts with the State of Michigan and within this judicial district and division; (ii) Defendant purposely, regularly, and continuously conducts business in the State of Michigan and within this judicial district and division; (iii) Defendant purposefully directed its activities at residents of the State of Michigan; and (iv) the causes of action set forth herein arise out of or relate to the Defendant's activities in the State of Michigan.

## Venue

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. §1331, §1338(a) and (c), and 28 U.S.C. §1400(b).

## The Controversy

7. The 35th Title of the United States Code prohibits falsely marking an article with an invalid or irrelevant patent: "(a) …Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article the word 'patent' or any word or number importing the same is patented, for the purpose of deceiving the public… Shall be fined not more than $500 for every such offense." § 292 (2008). The fine is calculable on a per-article basis. *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. Dec. 28, 2009).

8. The action for false marking is a *qui tam* cause of action. The federal government incentivizes competitors, consumers, patent professionals, interested parties and others to identify improperly marked items by sharing any proceeds for claims brought under §292. Accordingly, any claimant to a false marking action pays 50% of the recovered fines to the federal government and retains 50% of the recovered penalties.

9. Marking an article with a patent number informs the public that the article is covered by the indicated patent. The false marking statute serves to regulate marking so that the public is provided with accurate information about what products are (or are not) covered by a valid patent.

10. A patent assignee enjoys several benefits from marking their products and advertising materials with relevant patent numbers. Patent assignees are benefited by marking their articles with patent numbers because doing so can discourage potential or existing competitors from engaging in the relevant market. *Forest Group v. Bon Tool*, *supra* at 1302-03. Existing and possibly new market participants are discouraged from innovating when articles are marked with patent numbers. Many companies mark their products with patent numbers to quell competition.

11. Another direct competitive benefit to marking articles with patent numbers is that it gives consumers the impression that there are features of the article that are only available through the associated brand name. Consumers are thus willing to pay more money for a product advertised as patented than other unpatented alternatives. For this reason also, companies routinely mark their commercial items with relevant patent numbers.

12. Patentees are not, by law, obligated to mark articles with relevant patents but they also do so to establish constructive knowledge for infringement damages. Constructive or actual

knowledge is necessary to obtain damages for patent infringement. 35 U.S.C. §287(a)(2008)("no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice."). So in order to bolster claims of infringement, patent holders will also mark their products with phrases that indicate patent coverage including, e.g. a patent number. Accordingly, it is paramount to the U.S. patent system that products are accurately marked.

13. When a patent expires, all prospective rights in the patent terminate irrevocably. As a result, a product marked with an expired patent is unpatented and falsely marked. It has been decided that knowingly marking a product with an expired patent number can give rise to an inference of intent to deceive under the false marking statute. *See e.g.*, *Cf. Hart-Carter Co. v. J.P. Burroughs & Sons, Inc.*, 605 F.Supp. 1327, 1342 (E.D. Mich. 1985)(J. Newblatt: "The inclusion of such irrelevant and expired patent numbers on Plaintiffs' name plate could only confuse and mislead and play a role in Plaintiffs' attempt to obtain a patent monopoly or to scare off competitors.")

14. Clorox has an extensive patent portfolio and in-house patent advisors. Clorox is an extremely patent savvy corporation, well capable of ascertaining whether their patents cover their products and whether their patents have expired. Clorox routinely incorporates patents into its marketing and advertising materials. Clorox, however, has and is inappropriately advertising that the core technology for one of its products is covered by a U.S. patent when it is not. Moreover the patent listed on the product has long expired.

### Clorox Replacement "Pitcher Filters" Are Falsely Marked as Patented

15. Clorox, through its brand name Brita®, offers water filtration systems. Clorox offers pitchers of different sizes, with compatible filters. The insertable filters essentially enable Clorox's water purification system. Clorox's pitcher filter literature states: "The Amazing Brita® Filter. The Brita® Filter's activated carbon and ion exchange resin work together to filter your water so you get healthier, great-tasting drinking water."



16. Replacement of the pitcher filters is cited as "essential" to product performance. *Id.* The replacement filters references one, lone patent on its product literature.

17. As late as June 19, 2010, Clorox advertised that its enabling pitcher filters were patented by U.S. Patent No. 4,969,996 ("the '996 Patent"). The '996 Patent is titled a "Water Purification Device With an Intake Funnel." The '996 Patent was filed in the United States on February 28, 1989. The '996 Patent issued on November 13, 1990. Accordingly, the '996 Patent expired no later than February 28, 2009. *See* 35 U.S.C. § 154. Yet, more than a year after the expiry of its patent Clorox continues to mark Brita® pitcher filters with an expired patent number. *To-date product literature for Clorox's pitcher filters is captured hereinbelow.*

 

18. For at least 15 months, Clorox has and continues to mark its pitcher filters, product packaging, and/or advertising materials with an expired United States patent.

19. Clorox is a sufficiently patent savvy corporation such that Clorox knew or should have known that its pitcher filters were and are still falsely marked. Clorox did not have, and could not have had, a reasonable belief that their products were properly marked because the relevant patent expired, at the latest, on February 28, 2009. Yet, Clorox continues to mark and advertise their pitcher filters as patented.

20. Moreover, even when the '996 Patent was valid it clearly did not cover Clorox's pitcher filters. The '996 Patent, includes one claims set. Independent claim 1 reads as follows:

> 1. A water purification device comprising
>    **an intake funnel**,
>    a **sleeve** wherein said sleeve is sealingly connected to said funnel at an upper end of said sleeve, said sleeve further having an opening formed therein,
>    an insert having approximately cylindrical side walls, a filter cover and a filter bottom for accommodating a granulate filter agent therein with **means defining an air collecting space**, located in at least a portion of the filter bottom, said means defining the air collecting space extending upwardly at least partially towards the side wall and to the opening in said sleeve, with said filter bottom having opening means to allow the passage of filtrate therethrough, and with said filter cover having opening means whereby fluid can be passed into the insert.

(emphasis added).

21. Figure 4 of the '996 Patent is reproduced hereinbelow for illustrative purposes only.



22. Even before the '996 Patent had expired, the Clorox pitcher filters were not covered the '996 patent because every claim therein is written towards a "water purification device" (e.g., the pitcher shown in Figure 4) that includes an "intake funnel (1)" and "sleeve(2)." The replacement filters were clearly never covered by the '996 Patent because neither an intake funnel nor a sleeve are included in the filters. Yet throughout the nearly nineteen-year term of the '996 Patent Clorox routinely marked its pitcher filters as covered by the '996 Patent when they could not have been.

23. It is further demonstrated that Clorox's pitcher filters were not covered by the '996 Patent because all claims require that the filter bottom have a "means defining an air collecting space, located in at least a portion of the filter bottom, said means defining the air

collecting space extending upwardly at least partially towards the side wall and to the opening in said sleeve." [1]

24.  The means defining an air collecting space is described as being the object and novel attribute of the '996 Patent:

> [a]n insert for such a water purification device has admittedly already been provided, which comprises a generally cylindrical cup containing the filter material and a close filter member which can be fitted cover-like on to the cup. … The problem of removing air from the lower region of the insert and the sleeve was therefore still not satisfactorily solved. …
>
> In accordance with the invention that problem is solved in that the filter bottom has air collecting space which is extended upwardly at least partially towards the side wall [of the sleeve].

Col. 1, line 51 through Col. 2, line 6.

25.  The '996 Patent goes on to continue teaching that the replacement filter alone cannot solve the problem of air collection.  Col. 2, ll 6-10(emphasis added)("It has been seen that the air which collects at the lower or outer end of the insert and therewith also the sleeve of the intake funnel is inevitable and also **cannot be readily removed within the insert.**").

26.  Therefore, as early as February 28, 1989, when the '996 Patent was filed as an application, Clorox knew that the invention disclosed in the '996 Patent required both the intake funnel sleeve *and* filter insert to work.  The '996 Patent teaches that the insert by itself cannot include a "means defining an air collecting space" as recited in claim 1.  Well before the expiry of the '996 Patent Clorox intentionally mismarked its replacement filters with a patent that did not cover the filters.

27.  Clorox's pitcher filters are, as Clorox states, the "essential" enabling device to their water purification offerings.  The '996 Patent is the sole patent referenced on Clorox's

---

[1] According to 35 U.S.C. § 112, paragraph 6, claim 1 of the '996 Patent "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." (2008)

pitcher filters. Clorox is sufficiently patent savvy to know the status of any patents Clorox has on its essential or core technologies. Clorox falsely marked its pitcher filters for the purpose of deceiving the public into believing that Clorox's pitcher filters were patented for years when they were not. Moreover, Clorox continues to falsely mark its pitcher filters – beyond the expiry of the '996 Patent – for the purpose of deceiving the public into believing that Clorox's pitcher filters are still patented.

28. Clorox further falsely marked and is falsely marking its pitcher filters to quell competition and protect its market position.

### COUNT ONE – False Marking

29. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 28 of this Compliant as if fully set forth herein.

30. Defendant has and continues to falsely mark the above-mentioned products with irrelevant and expired United States patent numbers.

31. Defendant knew that their replacement filters were never covered by U.S. Patent No. 4,969,996 but they routinely marked their filters as such through the life of the '996 Patent.

32. Defendant also knew that U.S. Patent No. 4,969,996 would expire no later than February 28, 2009. Yet, Defendant continues to mismark their pitcher filters with the expired patent number. No reasonable person would believe that any product could be properly marked with an expired patent. Defendant, knowingly falsely marked its above-mentioned products with an intent to deceive the public.

33. Pursuant to 35 U.S.C. § 292, Defendant should be penalized up to $500.00 per article falsely marked.

34. Pursuant to 35 U.S.C. § 285, Plaintiff is also entitled to attorneys' fees and costs.

## COUNT TWO – False Advertising

35. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 34 of this Compliant as if fully set forth herein.

36. Defendant, by aforesaid acts, has engaged in conduct that has a probability of causing confusion or misunderstanding as to the legal rights, obligations, or remedies of consumers. Defendant did so throughout the term of U.S. Patent No. 4,969,996 and even beyond its expiry.

37. Plaintiff actually purchased at least one of Defendant's falsely marked pitcher filters. Defendant, by aforesaid acts, also made a representation of fact or statement of fact material to the transaction such that consumers (such as Plaintiff) reasonably believe that the represented state of affairs is other than it actually is.

38. Defendant's aforesaid acts are in violation of Michigan Consumer Protection Act, MCL §445.903 and Michigan common law.

39. Unless enjoined by this Court, Defendant will continue its malfeasance, thereby deceiving and confusing the public. Plaintiff requests injunctive relief under MCL § 445.911.

40. Plaintiff is also entitled to recover its costs and attorneys' fees.

## Relief

WHEREFORE, Plaintiff Just Intellectuals requests entry of judgment against Defendant The Clorox Corporation granting relief as follows:

A. A determination that Clorox has violated 35 U.S.C § 292 by falsely marking its unpatented articles with expired patent numbers for the purpose of deceiving the American public;

B. An order fining Clorox for false marking of its products $500 for each article falsely marked or an amount which is reasonable and equitable in light of the total revenues and profits derived from the sale of falsely marked goods, with half of the fine payable to the United States;

C. Any attorneys fees deemed payable under 35 U.S.C. §285;

D. An order preliminarily and permanently enjoining Clorox, its officers, agents, servants, employees, contractors, suppliers and attorneys from committing new acts of false patent marking and to cease all existing acts of false patent marking within 90 days;

E. An award for all costs incurred by Plaintiff in bringing and maintaining this action, including reasonable attorney's fees; and

F. Any such other relief as may be just and equitable under the circumstances.

## Demand for Jury Trial

Under Federal Rule of Civil Procedure 38, the Seventh Amendment of the U.S. Constitution and above-referenced federal statutes Plaintiff respectfully demands a trial by jury on all issues so triable of right by jury trial.

**Monday, June 21, 2010**

Respectfully submitted,

___s/ *Kristy J. Downing* /_____
KRISTY J. DOWNING (P 67122)
Attorney for Plaintiff
39555 Orchard Hill Place, Suite 600
Novi, Michigan 48375
(248) 982-3925